UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MORGAN WEIMER,<br><br>        Plaintiff,<br><br>   v.<br><br>THE CITY OF SEQUIM,<br><br>        Defendant. | CASE NO. 3:14-CV-05713-RJB<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 14) and Plaintiff's Motion to Strike (Dkt. 23). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

PROCEDURAL HISTORY

This case stems from an incident of alleged excessive force by law enforcement for the City of Sequim, Defendant, against Morgan Weimer, Plaintiff. Dkt. 1. Plaintiff makes federal claims against the City for violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978) and state claims for assault and battery. *Id*.

RELEVANT FACTS

Although much of the incident central to this case was captured on video, the parties' characterizations of the events differ. According to Defendant, City of Sequim officers Dennis,

1  Turner, and Larson responded to a report of disturbance at the Oasis Bar and Grill.  Defendant

2  alleges that the officers observed Plaintiff strike another person with his elbow, after which

3  Officers Larsen and Dennis escorted Plaintiff out of the bar.  Defendant claims Plaintiff resisted

4  the arrest, and as he passed through the exit door, Plaintiff's momentum carried him onto a

5  planter box directly outside. Defendant contends that in spite of verbal commands, Plaintiff

6  continued to resist, so Officer Larsen utilized three "impact strikes" to coerce Plaintiff's

7  compliance with attempts to handcuff him, after which he ceased resistance and was taken into

8  custody. Dkt. 14, at 2, 3.

9       Plaintiff recites the facts differently. According to Plaintiff, officers observed Plaintiff

10  moving his elbow to distance himself from other patrons, who had taunted and bumped up

11  against Plaintiff and a friend. Officer Dennis approached Plaintiff and asked him to come outside

12  and talk, a request that Plaintiff contends he responded with, "No problem, officer." Plaintiff

13  states that when Plaintiff started walking towards the exit, Officer Dennis pushed Plaintiff out

14  the door and into a planter box, after which Officer Dennis punched Plaintiff three times in his

15  lower back. Plaintiff maintains Plaintiff did not physically resist officers. Dkt. 23, at 3, 4.

16       Plaintiff also alleges that, following the incident, City Attorney for the City of Sequim,

17  Craig Ritchie, spoke to media about the case, declaring that "From what I've seen, it fits our

18  training, it fits standard practice, it fits our policies." Additionally, According to Plaintiff, the

19  Chief of Police, Bill Dickinson, reviewed an investigation of the incident, and in a letter to

20  Plaintiff, acknowledged that "the event did occur, but [] the officer's actions . . . were consistent

21  with their training, the Department's policies, and the Laws of the State of Washington." Dkt. 23,

22  at 10-12.

23                      SUMMARY JUDGMENT STANDARD

24

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

1   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

2                                                    DISCUSSION

3   **1.  Claims Under 42 U.S.C. § 1983**

4       In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that the conduct

5   complained of was committed by a person acting under color of state law, and that the conduct

6   deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

7   United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels*

8   *v. Williams*, 474 U.S. 327 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985),

9   *cert. denied*, 478 U.S. 1020 (1986).  A person is "seized" in violation of the Fourth Amendment

10  if he or she is the victim of unlawful, objectively unreasonable force by law enforcement.

11  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  In this case, the parties do not dispute that the

12  officers acted under color of law, but they dispute (a) whether Officer Dennis' use of force was

13  objectively unreasonable, and (b) whether the City of Sequim "ratified" Officer Dennis' actions,

14  incurring municipal liability under *Monell*.

15          *a.   Use of Force*

16          According to Defendant, the Court should grant summary judgment against Plaintiff

17  because Officer Dennis utilized constitutionally acceptable force. Dkt. 14, at 4-7. Defendant

18  argues that facts show that Officer Dennis' use of force was necessary for Officer Dennis to

19  defend himself from Plaintiff's resisting and escalating behavior. *Id*., at 6. Furthermore,

20  Defendant's expert witness, Thomas Ovens, Sergeant with Seattle Police Department, also

21  concluded that Officer Dennis used reasonable force, an opinion that, Defendant contends,

22  Plaintiff has not rebutted. *Id*., at 5.

23          Whether use of force by law enforcement is constitutionally-permissible depends on

24

whether it is objectively reasonable, a fact-intensive inquiry that balances the nature and quality of the intrusion against the government's countervailing interests, such as officer safety or investigation. *Graham*, at 396. Not every push or shove violates the Fourth Amendment. *Id*. Instead, whether an officer used reasonable force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight," because officers must often "make split-second judgments." *Id*. The subjective intent of the officer is inconsequential, so the key question is whether the officer's actions are objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*., at 397.

In this case, the Court cannot find that there is no issue of material fact as to Officer Dennis' use of force. While both sides embellish what the cell phone and surveillance videos actually show, it is clear that reasonable minds may differ as to the reasonableness of Officer Dennis' actions. The Court's caution in determining whether Officer Dennis used excessive force is especially warranted on the facts in this case, because the Ninth Circuit has "often held that in police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury. *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). While the videos will no doubt assist the jury's credibility determination, the videos are limited evidence; they lack sound, color, and perspective. They are not entirely conclusive, as the parties suggest. Defendant's motion on these grounds should be denied.

    b. *Municipal Liability under Monell*

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or

policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

"A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). A local government may be held liable under § 1983 for a single incident "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (*internal quotation marks and citations omitted*).

Defendant's motion for summary judgment on the federal constitutional claim for violation of Plaintiff's Fourth Amendment rights, brought pursuant to 42 U.S.C. § 1983 and under *Monell* (Dkt. 14) should be denied. There is sufficient evidence to show that Chief Dickinson is a policymaker and there are issues of fact on whether he ratified the officer's conduct.

i. Chief Dickinson as a Policymaker

"Whether an official has final policymaking authority is a question for the court to decide based on state law." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

The City argues that it is a "council-manager, non charter code, city" and all "legislative authority is vested in the City Council." Dkt. 14, at 8 (*citing* RCW 35A.13.230). It argues that

ORDER ON MOTION FOR SUMMARY
JUDGMENT AND MOTION TO STRIKE- 6

1  under RCW 35A.13.080, the City Manager has general supervision over the administrative

2  affairs of the City. *Id.* It argues, accordingly, that Police Chief Dickinson is not a "policy

3  maker." *Id.*

4      "Authority to make municipal policy may be delegated by an official who possesses such

5  authority" however. *Christie* at 1236. In deciding whether the official in question possess final

6  authority to establish municipal policy with respect to the challenged action, "courts consider

7  whether the official's discretionary decision is constrained by policies not of that official's

8  making and whether the official's decision is subject to review by the municipality's authorized

9  policymakers." *Id.*, at 1236-37.

10     Chief Dickinson testified that when it comes to police use-of-force polices, he "puts them

11 into operation, . . . determine[s] whether the ones sent to [them] are appropriate for [them] and

12 [he] place[s] them out as a directive for the officers to follow." Dkt. 22-1, at 5. Chief Dickinson

13 states that neither the City Council nor the City Manager writes or approves police policies. *Id.*

14 Based on that testimony, it appears that his decisions on use-of-force are not "constrained by

15 polices" made by others. *Christie* at 1236. The City points out that Chief Dickinson also

16 testified that his decisions are subject to review. Dkt. 24. Chief Dickinson testified that

17 generally, "anything I do can get reviewed by the City Manager; so if they appeal any of my

18 decisions that's where it goes." Dkt. 22-1, at 4. He agreed that he is the "policy-maker on police

19 matters" generally, "recognizing that [he] can be overridden." Dkt. 25, at 6. However, he also

20 testified that he ultimately decides whether or not to hire an officer, what training is appropriate,

21 and whether an officer will receive counseling. Dkt. 22-1, at 5. When asked specifically if his

22 decisions have been overridden, he stated, "[n]ot on an operational matter, but they will do things

23 like reduce my budget and take staffing away and decide which programs we will or will not

24

operate within the Department." Dkt. 25, at 6.  Chief Dickinson testified that the City Council determines "what kinds of activities we can or cannot carry out for them or for the community," like, for example, "[w]hether we have a police officer working in schools and whether we do or do not do traffic enforcement." *Id.*  Though a close question, under the second prong of the test, then, his decision on use-of-force issues are not "subject to review by the municipality's authorized policymakers," *Christie* at 1237, and so the second prong is met.  There is at least an issue of fact as to whether Chief Dickinson is a policymaker for purposes of *Monell* liability here regarding the use-of-force.

    ii.  <u>Ratification</u>

There are issues of fact as to whether Chief Dickinson "ratified" the conduct of the officer in a manner required for liability under *Monell.*

If an authorized policymaker approves "a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Clouthier,* at 1250. (*internal quotation marks and citations omitted*).  "A local government can be held liable under § 1983 only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (*internal quotation marks and citations omitted*).  Accordingly, there must "be evidence of a conscious, affirmative choice on the part of the authorized policymaker." *Id.*

Chief Dickinson wrote a letter which acknowledged that "the event did occur, but [] the officer's actions . . . were consistent with their training, the Department's policies, and the Laws of the State of Washington." Dkt. 23, at 10-12.  (The Court notes that the precise training, polices, and laws were not fully provided and /or identified for the record).  A "rational juror

could infer that [the policymaker's] acts showed affirmative agreement with the [officer's] actions," here so there are at least issues of fact with respect to ratification. *Christie*, at 1240.

The City maintains that Chief Dickinson would have to be aware that the conduct was unconstitutional in order to be said to have ratified it, the City fails to point to any authority that supports that proposition. It cannot reasonably be said that Chief Dickinson was unaware that he was reviewing the incident to determine whether the officer's violated Plaintiff's Fourth Amendment rights regarding use of force. Further, the City argues in its Reply that there must be a showing that Chief Dickinson acted with deliberate indifference to the officer's alleged constitutional violations. Dkt. 24. The City appears to conflate the deliberate indifference basis for *Monell* liability with the ratification basis for *Monell* liability, which is asserted here. In a deliberate indifference basis for *Monell* liability, the policymaker's deliberate indifference causes or leads to the subordinate's violation of constitutional rights. *Christie*, at 1240. Plaintiff is asserting a claim for ratification after the violation.

Defendant's motion for summary judgment on the federal constitutional claim for violation of Plaintiff's Fourth Amendment rights, brought pursuant to 42 U.S.C. § 1983 and under *Monell* (Dkt. 14) should be denied.

**2. State Law Claims**

According to Defendant, Plaintiff's state law claims of Assault and Battery should be dismissed because officers were privileged to use force against Plaintiff. Dkt. 14, at 10, 11. In raising the defense of privilege, Defendant cites to RCW 10.21.050, which provides that "If after notice of an intention to arrest [a person], he or she either flees or forcibly resists, the officer may use all necessary force to effect the arrest[.]" Defendant correctly points out that liability attaches at the point where an officer exceeds the force objectively reasonable under the

1  circumstances. *Id*. at 11. However, the precise moment, if any, that Officer Dennis' use of force 2 was objectively unreasonable is an issue of material fact to be resolved a jury. Moreover, the 3 same issue of fact is at issue in Plaintiff's § 1983 claim, including whether Plaintiff resisted 4 arrest. Defendant's motion for summary judgment on Plaintiff's state law claims should be 5 denied.

**3. Admissibility of Sergeant Ovens' Expert Testimony**

Plaintiff moves to strike Sergeant Oven's testimony, arguing that it draws inferences in favor of the police. Dkt. 23. For purposes of this motion, that motion should be denied. Plaintiff's testimony raises issues of fact countering Sergeant Ovens' opinions. Nothing in the denial of this motion, however, shall preclude the Plaintiff, if he so wishes, from renewing the motion at a later date. The denial of this motion to strike should not be read as a finding that Sergeant Ovens' opinions are admissible at trial.

**ORDER**

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion for Summary Judgment (Dkt. 14) is **DENIED**, and
- Plaintiff's Motion to Strike (Dkt. 23) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 12th day of August, 2015.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge